IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**HEIDI H.**[1],

        Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,**

        Defendant.

Civ. No. 3:24-cv-02057-CL

**OPINION AND ORDER**

---

MARK D. CLARKE, Magistrate Judge:

Plaintiff Heidi H. seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for Disability Insurance Benefits and Supplemental Security Income. Full consent to magistrate judge jurisdiction was entered on December 13, 2024 (ECF No. 5). For the reasons provided below, the Commissioner's decision is REVERSED and REMANDED for the immediate calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Born in 1972, Plaintiff alleges disability beginning December 31, 2009, due to Attention-Deficit/Hyperactivity Disorder ("ADHD") and injuries from a November 2017 motor vehicle accident, including fractured vertebra and pelvis, and a vertebral artery occlusion. Tr. 140-50, 538-49. Her claims were denied initially in November 2018, and upon reconsideration in February 2019. Tr. 254, 259, 270, 273. On March 30, 2021, and July 23, 2021, hearings were held before

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

an Administrative Law Judge ("ALJ"), wherein Plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 57-87, 88-106. The ALJ issued a decision denying Plaintiff's claims in September 2021. Tr. 222-41. The Appeals Council vacated this decision and remanded Plaintiff's claims for further administrative proceedings. Tr. 248-51.

Plaintiff was again represented by an attorney and testified at a hearing on August 1, 2023, along with a medical consultant, Plaintiff's case worker, and a vocational consultant. Tr. 107-58. The ALJ issued another decision, finding that Plaintiff was not disabled on November 29, 2023. Tr. 19-44. After the Appeals Council denied her request for review, Plaintiff now requests the United States District Court review the ALJ's decision and alleges harmful legal error. Tr. 1-6; Pl. Br., ECF No. 9 at 3-20.

## THE ALJ'S FINDINGS

At step one of the five-step sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 25. At step two, the ALJ determined the following impairments were medically determinable and severe: "cervical and lumbar compression fractures and degenerative disc disease; pelvic fracture; sacral fracture status post open reduction and internal fixation of the public symphysis and pubic ramus; right vertebral artery occlusion; history of traumatic brain injury; ADHD; anxiety; depression; history of methamphetamine abuse; possible opioid abuse (20 C.F.R. § 404.1520(c) and 416.920(c))." *Id.* At step three, the ALJ found Plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 28.

Because she did not establish a presumptive disability at step three, the ALJ continued to evaluate how Plaintiff's impairments affected her ability to work. The ALJ resolved that Plaintiff had the residual function capacity ("RFC") to perform light work except:

2 - Opinion and Order

> [She can] occasionally lift and carry up to 20 pounds; frequent lifting and carrying of up to 10 pounds; walking 2 hours at one time and 4 hours in an 8 hour workday; standing 3 hours at a time and up to 7 hours in an 8 hour workday; no sitting restrictions, no work around hazards (such as unprotected heights or operating motor machinery); no climbing of ladders or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, and crouching, no crawling; frequent reaching, handling, and feeling bilaterally; simple tasks; and few changes in a routine work setting (with well-established routines and expectations and predictable schedule).

Tr. 30.

At step four, the ALJ determined Plaintiff has no past relevant work. Tr. 43. At step five, the ALJ concluded, based on the VE's testimony, that there were a significant number of jobs in the national economy Plaintiff could perform despite her impairments. *Id.*

## DISCUSSION

Plaintiff (1) argues the ALJ erred by finding the medical opinion of Ken Berger, M.D., J.D., persuasive, and the medical opinion of Molly Rodden, PMHNP, unpersuasive; and (2) contends that the ALJ's discounting of her subjective symptom testimony lacked clear and convincing reasons. Pl. Br. at 3-20.

**(1)    *Ken Berger.*** Ken Berger, a physician and attorney, testified at the administrative hearing as a medical expert and opined on Plaintiff's physical impairments only. Tr. 112-24. Dr. Berger opined that none of Plaintiff's physical impairments would meet or equal a listing. Tr. 113. He felt they would interfere with her ability to perform basic work activities and assessed her as limited to lifting and carrying ten pounds frequently and twenty pounds occasionally; walking two hours at a time, four hours in a workday; standing three hours at a time and seven hours in a workday; no sitting restrictions; and frequently reaching and handling. Tr. 113-14. Dr. Berger explained that further limitations were not warranted, as there was no evidence of a spinal cord injury, a fracture in hardware, or a lack of healing. Tr. 115, 116.

3 - Opinion and Order

The ALJ found that Dr. Berger's opinion was persuasive, stating that "[i]t is well supported by explanation and a review of the complete record, and is consistent with the record." Tr. 37. The ALJ then lists several objective findings that, in his eyes, support Dr. Berger's opinion on Plaintiff's physical capabilities. *See id.* Plaintiff contends that the ALJ's explanation is not supported by or consistent with the record. Pl. Br. at 16-17; *see* 20 C.F.R. § 404.1520c (the regulations require ALJs to evaluate the supportability and consistency of a medical opinion when assessing its persuasiveness); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (ALJs must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors") (quoting 20 C.F.R. § 404.1520c(b)(2)). Plaintiff also asserts that objective findings only provide a limited amount of insight into the pain that an individual is experiencing from their impairments, and that Dr. Berger disregarded evidence in the record that Plaintiff continued to experience significant pain, even after healing from her corrective surgeries. Pl. Br. at 16-17, citing SSR 16-3p, *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021). The Court agrees, particularly because the ALJ failed to weigh Dr. Berger's medical opinion against the other five in the record.

Here, the ALJ first erred because ALJs have an obligation to compare a medical opinion with other evidence in the record and "provid[e] an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. The Ninth Circuit has made clear that in evaluating the consistency factor, an ALJ must evaluate whether the "medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)) (emphasis added). Because the ALJ stated only that Dr. Berger's opinion was "consistent with the record" and listed several treatment note observations rather than comparing Dr. Berger's opinion to other providers' opinions, the Court

4 - Opinion and Order

declines to speculate as to what findings support the ALJ's conclusion that the opinion of Dr. Berger was "consistent" with those of other medical sources. Consequently, the Court is unable to find the ALJ properly discussed the consistency factor. *See Woods*, 32 F.4th at 792 (the factor addresses "the extent to which a medical opinion is consistent with the evidence from other medical and nonmedical sources") (internal quotation marks omitted, emphasis added). Because the ALJ provided no explanation for why Dr. Berger's opinion was or was not "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim," it is apparent that his analysis runs afoul of applicable law. *Id.*

Furthermore, the ALJ's discussion of the supportability factor also falls short of the requirements under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. The ALJ cited particular portions of the record that support Dr. Berger's opinion, but does not explain how findings such as "lumbar degenerative disc disease and fractures[,]" or "pain with crouching[,]" or "decreased range of motion" support Dr. Berger's opinion that Plaintiff could walk for four hours in an eight-hour workday, or how she could stand "up to [seven] hours in an [eight]-hour workday." Tr. 37, citing Tr. 766, 883, 1307, 1311, 1913, 1920. Though the ALJ listed several objective findings that highlight the severity of Plaintiff's physical impairments and "balanced [them] against" other normal observations in the record, the ALJ still did not provide an explanation as to *how* those specific findings from Plaintiff's musculoskeletal exams and x-rays supported Dr. Berger's opinion regarding Plaintiff's ability to regularly attend work with no sitting limitations, or that she could stand for up to seven hours in a typical workday. Tr. 37. This was error, because an ALJ has a duty to "set forth" his reasoning "in a way that allows for meaningful review[,]" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015), which requires building an "accurate and logical bridge from the evidence to [the ALJ's] conclusions." *Micheal D. v. Comm'r of Soc. Sec.*, No.

5 - Opinion and Order

2:22-CV-464-DWC, 2022 WL 4377400, at *3 (W.D. Wash. Sept. 22, 2022) (quoting *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003)). No logical bridge was offered, and the Court cannot meaningfully review the ALJ's decision regarding Dr. Berger's opinion. Thus, the ALJ erred.

**(2)**     ***Molly Rodden.*** Molly Rodden, a psychiatric-mental health nurse practitioner, is one of Plaintiff's psychiatric providers who opined twice on Plaintiff's impairments. Tr. 1551-57, 1783-88. In her 2020 opinion, Rodden listed the three medications (Gabapentin, Oxycodone, Cymbalta) she prescribed to Plaintiff and their respective side effects. Tr. 1552. Plaintiff's relevant side effects include dizziness, fatigue, poor memory, reduced coordination, sedation, and brain gaps. *Id.* Rodden opined on Plaintiff's chronic pain, stating her pain is between a seven and nine daily due to chronic headaches, pain in her cervical spine at the site of multiple previous fractures, chronic pain from previously crushed pelvis, and complex nerve pain. *Id.* Regarding Plaintiff's functional capabilities, Rodden opined that Plaintiff could not maintain any position, whether it be sitting, standing, or walking, for more than ten minutes and needed to reposition herself frequently. Tr. 1552, 1553. Rodden did not feel that Plaintiff should lift more than ten pounds. Tr. 1552. Due to Plaintiff's brain injury and ADHD, her ability to stay on task, maintain regular attendance and perform activities within a schedule, or perform simple and repetitive tasks was significantly impaired. Tr. 1554-55. Rodden noted Plaintiff had high levels of impulsivity and distractibility, as well as poor focus, which would interfere with her ability to work around others. Tr. 1556. Rodden reiterated this statement in March 2021. Tr. 1783-88.

The ALJ found that Rodden's opinion about Plaintiff's physical functioning was not persuasive because she is a mental healthcare provider and, while she noted pain behaviors, she also observed normal strength, gait and balance, normal coordination, and a healthy appearance.

6 - Opinion and Order

Tr. 40. Further, the ALJ found Dr. Berger's opinion about Plaintiff's physical impairments more persuasive than Rodden's because "he was able to evaluate the complete medical record, is well qualified to offer a physical opinion, and because his opinion is more consistent with [Plaintiff]'s actual physical functioning on exam." *Id*. Regarding Rodden's opinion on Plaintiff's mental health limitations, the ALJ found that while this was within Rodden's expertise, she "overestimated" Plaintiff's "limitations in a manner inconsistent with [her] captured mental functioning on exam." *Id*. Plaintiff again contends that the ALJ's explanation is not supported by or consistent with the record. Pl. Br. at 17-19; 20 C.F.R. § 404.1520c; *Woods*, 32 F.4th at 792. The Court agrees.

The ALJ is correct that Rodden did not opine on some of Plaintiff's exertional capabilities because she is a mental healthcare provider. Tr. 1570-71. However, the ALJ's evaluation of the consistency factor of Rodden's opinion is largely similar to that of Dr. Berger's. Aside from stating Dr. Berger's opinion on Plaintiff's physical limitations was more persuasive than Rodden's, the ALJ again largely relied only on objective findings to find Rodden's opinion unpersuasive, both for physical and mental limitations. And as previously determined, using this line of reasoning prevents the Court from concluding that the ALJ properly discussed the consistency factor. *See Woods*, 32 F.4th at 792.

Furthermore, the ALJ's discussion of the supportability factor also falls short of the requirements under 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c. The ALJ cited particular portions of the record indicating an improvement in Plaintiff's mental health symptoms while ignoring notes from the very same visits discussing the persistent severity of her symptoms. For example, the ALJ cited treatment notes showing Plaintiff's normal memory, but those same treatment notes also indicate a "severe deficit in delayed memory with visuospatial/constructional ability" and that Plaintiff presented with "difficulties suggestive of brain injury" and "disorganized

7 - Opinion and Order

thinking and impulsivity during testing." Tr. 769. The ALJ cited Plaintiff's appropriate mood, affect, cooperation, and grooming, but those same treatment notes indicate that her "[s]peech is slower and appropriate, [Plaintiff] continues to interrupt provider and will often lose her train of thought while speaking" and was positive for "depression, anxiety, sleep disturbances, and memory loss." Tr. 1920; *see also* Tr. 2151, 2159, 2179, 2184-85, 2228, 2233, 2239. Throughout the decision, the ALJ's description of the objective medical evidence cherry picks the evidence which supports his finding while ignoring other contradictory evidence. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding error when the ALJ's decision did not account for the record "as a whole," but rather relied on "cherry picked" evidence); *Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

The ALJ's reliance on normal mental status examination findings to the exclusion of all other evidence of mental health impairments did not constitute a valid reason, supported by substantial evidence, to find Rodden's opinion not persuasive.

**(3)** ***Subjective Symptom Testimony.*** Plaintiff argues that the ALJ failed to give specific, clear and convincing reasons for discounting her subjective symptom testimony. Pl. Br. at 4-15; *Brown-Hunter*, 806 F.3d at 488-89 (if a claimant provides objective medical evidence of an underlying impairment and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony); 20 C.F.R. § 404.1529. According to Plaintiff, the ALJ's bases for discounting her symptom testimony—objective

medical evidence and activities of daily living—were unsupported or failed to account for the entire record. Pl. Br. at 4-15. The Court agrees.[2]

(a)    **Objective Medical Evidence.** The ALJ acknowledged Plaintiff's testimony and responses in her function report regarding her chronic pain from two motor vehicle accidents that ended in multiple fractures and head injuries, as well as her general complaint of ADHD. Tr. 31. The ALJ then lists several objective medical findings in an attempt to undermine Plaintiff's testimony about her mental and physical impairments. *See* Tr. 32-36. However, the ALJ solely used the objective medical evidence to support his own RFC finding, which falls short of Ninth Circuit requirements. An ALJ's failure to "link [a claimant's] testimony to the particular parts of the record supporting her non-credibility determination [is] legal error." *Brown-Hunter*, 806 F.3d at 494. The ALJ has failed to do so here.

Looking to the ALJ's decision, he cites several objective findings but fails to connect those findings to any of Plaintiff's testimony. The only analysis offered was that Plaintiff's "cervical and lumbar compression fractures and degenerative disc disease; pelvic fracture; sacral fracture status post open reduction and internal fixation of the public symphysis and pubic ramus; and right vertebral artery occlusion support a limitation to light work[.]" Tr. 32. Regarding Plaintiff's mental health limitations, the ALJ similarly cited several objective medical findings and stated, "history

---

[2] The ALJ mentions "possible opioid abuse" in his decision as a severe impairment. This finding does not meet the legal standard required for a medically determinable impairment. *See* 20 C.F.R. § 404.1520(c). To the extent the ALJ relies on Plaintiff's "possible opioid abuse" to undermine her credibility, that finding is not supported by substantial evidence. This unsupported and assumed fact leads to speculation that Plaintiff abuses opioids. ALJs are barred from speculating on such issues. *See* SSR 86-8, 1986 WL 68636, at *8 (1986) ("presumptions, speculations and suppositions should not be substituted for evidence"); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998)). If the ALJ wanted to conduct a proper DAA analysis, he should have done so when forming his decision. *See* 20 C.F.R. § 404.1535(b).

of traumatic brain injury supports a limitation to light work with no exposure to hazards and no climbing of ladders or scaffolds." Tr. 34, 36. Neither of these explanations point to Plaintiff's testimony regarding her continued pelvic or neck pain, her urinary incontinence, her lingering anxiety, or memory gaps. And because the ALJ failed to "link [Plaintiff]'s testimony to the particular parts of the record supporting [his] non-credibility determination[,]" the Court will not do so for him. *Brown-Hunter* makes clear that courts err when they usurp the ALJ's duty to try to link particular testimony to specific evidence that the ALJ might have found to undermine it. 806 F.3d at 494 (ALJ's "error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence.") For the above reasons, the Court concludes that the manner in which the ALJ used the objective medical evidence to undermine Plaintiff's testimony is not a clear-and-convincing reason supported by substantial evidence.

(b)     **Activities of Daily Living.** The last reason the ALJ cited to discount Plaintiff's subjective symptom testimony was that her activities of daily living were not as "limited as she alleged at the hearing and in her function report." Tr. 36. The ALJ also stated that although Plaintiff "reported that her impairments significantly limited her daily activities, this cannot be objectively verified with any reasonable degree of certainty" and that "the evidence shows activities that are somewhat less limited than would be expected given the allegations of disabling symptoms and limitations." *Id.* The Court is unconvinced.

In her function report, Plaintiff stated that she takes Morphine to be able to get up to eat. Tr. 571. She also claims that she is never well-rested and has continuous nightmares. *Id.* Due to past injuries from two motor vehicle accidents, she stated the damage to her pelvis causes urinary accidents, so she wears a diaper. Tr. 572. She testified that she sleeps most of the day, and that due to her urinary incontinence and pelvic pain, she has had to crawl on the floor before to get to the

10 - Opinion and Order

bathroom. Tr. 142. Although she can perform some household chores, her injuries have tripled the time required. Tr. 573. Any grocery shopping is done intermittently, and she uses the motorized cart to do so. *Id.*

The ALJ indicated that her ability to "prepare simple meals, do light housework, shop in stores, use public transportation, shop in stores, and read," suggests she can "perform simple routine tasks and responding appropriately to some changes in setting and routine. Her ability to do light housework also suggests, at least somewhat, that she can work at the above limited light residual functional capacity assessment." Tr. 36-37. But these are the exact activities the Ninth Circuit has cautioned against using to discredit symptom testimony. *See Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) ("evidence that [claimant] could assist with some household chores was not determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability."). Because Plaintiff's reported activities are akin to those cited in *Cooper v. Bowen*, the Court concludes that the ALJ's choice to use Plaintiff's activities of daily living to undermine her testimony is not a clear-and-convincing reason supported by substantial evidence. 815 F.2d at 561.

**(4)**    ***Remedy.*** The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The issue turns on the utility of further proceedings. *Garrison v. Colvin*, 759 F.3d 995, 1019, 1021 (9th Cir. 2014). Under the "credit-as-true" doctrine, evidence should be credited

11 - Opinion and Order

and an immediate award of benefits directed if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021. The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The Court concludes the credit-as-true standard is satisfied here and that remand for the payment of benefits is appropriate. The ALJ's finding that Dr. Berger's opinion was persuasive was not legally sufficient and lacked proper explanation to allow this Court to meaningfully review his decision. The ALJ also failed to provide legally sufficient reasons to reject Plaintiff's testimony and NP Rodden's medical opinion once again.[3] The record has been fully developed, including treatment notes spanning the relevant time period, opinions from several medical sources, and Plaintiff's testimony about the severity and effects of her impairments. Further proceedings would serve no useful purpose,[4] particularly because the ALJ has already twice failed to properly evaluate Rodden's medical opinion after being instructed to do so by the Appeals Council. Allowing the Commissioner to decide the issue again would create the precise "unfair 'heads we win; tails, let's play again' system of disability benefits adjudication" that the Ninth Circuit is trying to prevent.

---

[3] The Appeals Council ordered that further evaluation of Rodden's opinion was necessary because the ALJ faulted Rodden for not evaluating Plaintiff in person and because the ALJ failed to discuss any findings concerning Plaintiff's limited range of motion or tenderness. Tr. 250.

[4] The Commissioner did not argue or identify any useful purpose for further proceedings. *See generally* Def. Br., ECF 11.

12 - Opinion and Order

*See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). To the extent Rodden's opinions were ambiguous, or the record was inadequate to allow for proper evaluation of such opinions, the ALJ should have further developed the record and addressed such issue in his first decision. *See Garrison*, 759 F.3d at 1020 (quoting *Varney v. Sec'y of Health & Hum. Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988)) ("[I]f grounds for [concluding that a claimant is not disabled] exist, it is both reasonable and desirable to require the ALJ to articulate them in the original decision."); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

If Plaintiff's symptom testimony and Rodden's medical opinion are credited as true, the record reflects Plaintiff would be unable to work. Tr. 140-43, 149-50, 1551-58, 1569-75. The VE testified that "it is important a worker at an unskilled occupation must maintain no less than 85 percent [productivity] of the standard workday. If they are unable to do that, they are not going to sustain unskilled competitive employment." Tr. 153. When asked if an individual "who is absent from work two or more days a month could do any of these jobs?" the VE answered "[t]hey are not going to be available. They are not going to sustain that employment or any sustainable occupations." Tr. 156-57. As a result of the VE's testimony, the ALJ would be required to find plaintiff disabled on remand. *See Garrison*, 759 F.3d at 1022 n.28 (explaining "there is no need to develop the record or convene further administrative proceedings" where "the VE answered a question describing a hypothetical person with the RFC that the claimant would possess were the relevant opinion or testimony taken as true"). Finally, the Court does not have any serious doubt as to whether plaintiff is disabled within the meaning of the Social Security Act.

For those reasons, the Court remands this case for the calculation and payment of benefits. *See, e.g., Leitz v. Kijakazi*, No. 22-35356, 2023 WL 4342114, at *3 (9th Cir. July 5, 2023) ("The Government argues that we should remand for further proceedings rather than remand for an award

13 - Opinion and Order

of benefits. However, remand would serve no legitimate purpose . . . and permitting the Government to introduce additional evidence on remand would provide the Government with an unfair second opportunity to present its case. . . . We therefore remand to the district court with instructions to remand to the agency for an award of benefits.") (citations omitted); *Hoffschneider v. Kijakazi*, No. 18-15504, 2022 WL 3229989, at *3 (9th Cir. Aug. 10, 2022) ("Once the improperly discredited evidence is credited as true, the vocational expert's testimony forecloses a determination that [the claimant] can work. Because no 'serious doubt' remains that [the claimant] is disabled, there is nothing left to decide. We therefore reverse and remand with instructions to remand to the Commissioner for a calculation and award of benefits.") (citations omitted); *Varela v. Saul*, 827 F. App'x 713, 714-15 (9th Cir. 2020) (reversing district court opinion remanding for further proceedings and instead remanding with instructions to "remand to the Commissioner of Social Security for an award of benefits" where "crediting [the treating physician's] opinion as true, there is no doubt that [the claimant] was disabled.").

## CONCLUSION

For the reasons discussed above, the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is REVERSED, and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits.

DATED this ⟍20⟍ day of April 2026.

MARK D. CLARKE
United States Magistrate Judge

14 - Opinion and Order